<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| L.B., on behalf of S.B., a minor child, | : | **Civil Action No. 19-885 (SRC)** |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF | : |  |
| SOCIAL SECURITY, | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff L.B. on behalf of S.B. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and has considered the submissions of the parties. It proceeds to rule on the appeal without oral argument. <u>See</u> Fed. R. Civ. P. 78(b). For the reasons that follow, the Court affirms the decision of the Commissioner.

**I.      BACKGROUND**

L.B., S.B.'s mother, applied for supplemental security income ("SSI") on May 24, 2013. Plaintiff's claim for SSI was denied by the Social Security Administration on August 26, 2013. Plaintiff's subsequent request for reconsideration was denied on November 21, 2013. Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge, and on December 18, 2014, a hearing was held before Administrative Law Judge Theresa Merrill. On April 14, 2015,

ALJ Merrill issued a written opinion denying the application. Plaintiff's request for review to the Appeals Council was denied on September 9, 2016. Plaintiff then appealed the SSA's decision to the United States District Court for the District of New Jersey.

On September 14, 2017, the Honorable Susan D. Wigenton issued an Opinion and Order remanding the Commissioner's decision for further proceedings after finding that the "findings of the Commissioner [were] conclusory and fail[ed] to set forth how ALJ Merrill reached her decision." Because of this, Judge Wigenton was unable to determine whether substantial evidence existed to support the ALJ's findings. Thereafter, a remand hearing was held on June 9, 2018. On October 19, 2018, ALJ Merrill issued another opinion denying Plaintiff's application. Plaintiff filed the subject appeal on January 22, 2019.

In her decision dated October 19, 2018, ALJ Merrill found that S.B. has not been disabled since April 26, 2013, the date claimant's application was initially filed. After considering medical records, school records, and the testimony of claimant's mother, the ALJ found that S.B. does not have an impairment or a combination of impairments that result in either an extreme limitation in one domain of functioning or marked limitations in two domains of functioning. Thus, the ALJ determined that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded for the following reasons: 1) the ALJ failed to consider the effects of a structured setting on claimant's functioning; 2) the ALJ failed to consider relevant medical evidence and other testimony in determining that S.B. does not have marked limitations in the caring for yourself and health and physical well-being domains; 3) the ALJ failed to consider relevant

evidence in her analysis of the acquiring and using information domain and the "B" criteria of the mental health listings entitled Understanding, Remembering and Applying Information; and 4) the ALJ did not complete a proper analysis of paragraph B or paragraph C of the Listings.

## II. LEGAL STANDARD

The factual findings made by the Commissioner must be affirmed by this Court if they are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Ortega v. Comm'r of Soc. Sec., 232 Fed.Appx. 194, 196 (3d Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004) (quoting Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir.1995)).

The Social Security Administration has established a three-step process for determining whether an adolescent is disabled. 20 C.F.R. § 416.924. First, the SSA is to determine whether the claimant is participating in substantial gainful activity. If the claimant is performing substantial gainful activity, the SSA will find that the claimant is not disabled and the application will be denied. If the claimant is not participating in substantial gainful activity, the SSA will proceed to step two to determine whether the claimant's physical or mental impairments are severe. If the SSA finds that claimant's impairments or combination of impairments are not severe, the SSA will determine that claimant is not disabled and will not review the claim further. If, however, the SSA determines that the impairment is severe, the inquiry will proceed to step three wherein the SSA will review the claim to determine whether the impairment "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(d).

In order to determine whether the impairment or combination of impairments "functionally equals the listings," the SSA will assess claimant's functional limitations caused by the impairments in terms of six domains. The six domains to be considered are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. 20 C.F.R. § 416.926(a)(b)(1)(i)-(vi). The SSA must then consider whether claimant has "marked" or "extreme" limitations in each of the domains. An individual is said to have a "marked" limitation when the impairment "interferes seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). One's "day-to-day functioning may be seriously limited when [their] impairment(s) limits only one activity or when the interactive and cumulative effects of [their] impairment(s) limit several activities." Id. The SSA will find that an individual has an "extreme" limitation when the impairment "interferes very seriously with [one's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). One's "day-to-day functioning may be very seriously limited when [their] impairment(s) limits only one activity or when the interactive and cumulative effects of [their] impairment(s) limit several activities." Id. An "extreme limitation" means that the limitation is "'more than marked'" and, while it is "give[n] to the worst limitations," it "it does not necessarily mean a total lack or loss of ability to function." Id.

If the SSA finds that claimant has "marked" limitations in at least two domains, or an "extreme" limitation in one domain, the SSA may find that the impairment functionally equals the listings. If the SSA finds that the claimant has an impairment that meets, medically equals, or functionally equals the listings, and that it meets the duration requirement, the SSA will find

claimant disabled. 20 C.F.R. § 416.924(d)(1). If claimant does not have an impairment that meets, medically equals, or functionally equals the listings, or the impairment does not meet the duration requirement, the SSA will find that claimant is not disabled and will deny the application. 20 C.F.R. § 416.924(d)(2).

### III. DISCUSSION

In the matter at bar, the ALJ found that claimant, an adolescent, has not engaged in substantial gainful activity since April 26, 2013, the date the application for social security income was filed. The ALJ then determined that the claimant suffers from the following severe impairments: anxiety/post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); a learning disorder; and asthma. Thereafter the ALJ proceeded to step three and found that claimant's impairments did not meet, medically equal, or functionally equal the listings. Based on this, the ALJ found that claimant was not disabled under the Act and claimant's application for Social Security Income was denied.

In the subject appeal, Plaintiff argues that the ALJ erred by failing to consider the effects of a structured setting on claimant's functioning. Plaintiff appears to argue that, had the ALJ considered claimant's level of functioning without any of the resources provided to her by this structured setting, the ALJ would have found that claimant exhibited marked or extreme limitations in multiple domains and would have found claimant disabled.

While the ALJ must consider the effects of a structured setting on the claimant's level of functioning, the regulations do not require that the Social Security Administration must determine whether one is disabled based solely on an analysis of that individual in their natural state. Rather, the ALJ is to:

consider how well you are functioning in the setting and the nature of the setting in which you are functioning (e.g., home or a special class); the amount of help you need from your parents, teachers, or others to function as well as you do; adjustments you make to structure your environment; and how you would function without the structured or supportive setting.

20 C.F.R. § 416.924a(b)(3)(iv)(E).

In the matter at bar, the ALJ states that she has considered the claimant's level of functioning both with and without a supportive setting. The ALJ writes that, in making her determination, she "has evaluated the 'whole child' in making findings regarding functional equivalence." (Tr. 423.) Specifically, the ALJ "first evaluated how the child functions in all settings and at all times, as compared to other children the same age who do not have impairments" and "has considered the type, extent, and frequency of help the claimant needs to function." (Id.) In her written opinion, the ALJ notes and considers that, since the 2012-2013 academic year, claimant was "provided some out-of-class instruction in the areas of math and language arts" while noting that "she spent [] at least 80% of her time during a school day in the general course curriculum." (Tr. 416.) Additionally, the ALJ considered that claimant received speech therapy for about thirty (30) minutes per a week, received "ongoing treatment" in the form of medication for her ADHD, participated in inconsistent therapy sessions, and received some special education but was primarily enrolled in general education courses. (Id.) The ALJ stated that claimant "never required intensive or inpatient treatment or a highly structured environment to control her symptoms or maintain the improvement afforded by her medication" and further found that "there is no evidence which suggests that she required a special routine that she could not deviate from without serious symptoms/decompensation." (Tr. 422.)

Plaintiff cites no precedential case law supporting the proposition that the Social Security Administration must determine whether one is disabled based solely on an analysis of that individual's level of functioning absent any support. Rather, counsel for Plaintiff previously asserted this same argument before the Third Circuit in T.C. ex rel. Z.C. v. Commissioner of Social Security. 497 Fed.Appx. 158, 161 (3d Cir. 2012). There, the Third Circuit held that the District Court correctly found that the ALJ considered the effects of a structured setting and how claimant would function without that structured setting when the ALJ stated that he evaluated the whole child, considered how the child functions in all settings and at all times, and stated the specific accommodations that were provided to the child both in and out of school. Id. Similarly, in the matter before this court, the ALJ stated that she evaluated the whole child, and considered how the child functions in all settings at all times. The ALJ also considered the specific accommodations provided to the claimant both inside and outside of school and noted that given the level of accommodations currently offered to the claimant, "there is no evidence which suggests that she required a special routine that she could not deviate from without serious symptoms/decompensation." (Tr. 422.) ALJ Merrill provided the same analysis and conclusions that the Third Circuit previously found sufficient to satisfy the requirements under C.F.R. § 416.924a(b)(3)(iv)(E). Moreover, ALJ Merrill considered the possible repercussions of claimants' lack of a special routine thereby considering claimant's level of functioning outside of the structured environment. This analysis exceeds that which has been found sufficient by the Third Circuit. Thus, this Court finds that the ALJ adequately considered the effects of a structured environment on claimant's functioning, as required by the regulations.

Next, Plaintiff argues that the ALJ failed to consider relevant medical evidence and other testimony in determining that claimant does not have marked limitations in the "caring for yourself" and "health and physical well-being" domains. Specifically, Plaintiff contends that the ALJ failed to consider the following in her analysis: evidence from a neurologist, records from psychologists and therapists, pharmacy records, school attendance records and school progress reports.

In her decision, the ALJ repeatedly references and considers claimant's ADHD diagnosis, her Adderall prescription, and the progress that claimant exhibited while taking this medication. Despite this, Plaintiff argues that the ALJ's analysis is deficient because she "ignores evidence in Exhibit 6F revealing that Dr. Lomazow, S.B.'s treating neurologist, has needed to triple S.B.'s dosage over the years in order to control her symptoms." (Plaintiff's Brief 16-17.) Plaintiff does not explain how this constitutes reversible error.

The Supreme Court explained the operation of the harmless error doctrine in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination. The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. In such a case, "the claimant has the 'burden' of showing that an error was harmful." Id. at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. As to the ALJ's failure to consider claimant's increasing Adderall dosage over a two-year period, Plaintiff has not shown that this purported error was harmful.

Plaintiff further argues that the ALJ erred by failing to consider medical evidence related to claimant's alleged enuresis, difficulty grooming herself, and inability to sleep alone. Plaintiff specifically references what appear to be intake reports and comments from various treatment providers, including student interns, but characterizes the information within these documents as "medical evidence," stating that claimant's treating physicians made relevant observations and conclusions that were overlooked by the ALJ. For example, with regards to the July 22, 2014 core assessment from University Behavioral Health Care, Plaintiff states the following: "Dr. Iudica-Costa's assessment further concludes that S.B. requires assistance with her personal appearance and reminders about how to bathe herself properly. (Tr. 357). Dr. Iudica-Costa also observed that S.B. 'cannot tie her shoes and has difficulty buttoning her shirt.' (Tr. 612)." (Plaintiff's Brief 18.) Plaintiff claims that the ALJ erroneously failed to consider these medical conclusions. However, upon reviewing the 2014 core assessment, it is clear that these comments were not medical conclusions, but rather, were merely a description of what claimant's mother reported to the healthcare professionals. The 2014 core assessment states as follows:

> Mother reports that [S.B.] has difficulty bathing properly and the mother has to remind her how to wash herself properly in the shower. She cannot tie her shoes and has difficulty buttoning her shirt. Mother reports that she has [S.B.] help with straightening the house but mother ends up doing the work as [S.B.] does not clean adequately. Mother reports that [S.B.] has her own phone but uses it rarely and does not really know how to text etc.

(Tr. 612.) Plaintiff has clearly mischaracterized comments made by claimant's mother and incorrectly states that these are conclusions and findings made by claimant's treating physician. Upon a review of the cited documents, the Court finds that, given the context in which the statements were made, Plaintiff's assertion that the ALJ disregarded medical evidence is not

supported. The Court notes that Plaintiff repeatedly presents statements made by claimant's mother, which were then printed and included within various documents and reports created by medical providers, as findings or observations made by the medical professionals themselves. It is primarily these types of statements which form the basis for Plaintiff's allegations that the ALJ ignored medical evidence. Thus, the Court rejects the assertion that the ALJ disregarded medical evidence and finds that these arguments are without merit. Rather, based on the parties' submissions as well as this Court's review of the record, it appears that there are no treating physician opinions concluding that claimant is disabled under the Act or that she has a marked or extreme limitation as a result of her impairments.

Plaintiff argues that the ALJ further erred by failing to consider claimant's excessive absences due to her asthma, and claims that these absences are indicative of the severity of plaintiff's illness. However, the ALJ correctly noted in her opinion that claimant was "given multiple excuse slips by her doctor to explain absences from school," and that the absences usually lasted a day or two. (Tr. 419.) ALJ Merrill also considered evidence which weighed against the proposition that claimant suffers from severe asthma. First, ALJ Merrill noted that claimant's teacher, Ms. Rogers, explained that despite claimant's irregular absences and being "told she has asthma," claimant's teachers "don't ever recall her requiring medication at school." (Tr. 578.) The ALJ further explained that claimant "was apparently able to participate in normal physical education as well as dance classes, which suggests that she did not experience constant, active symptoms of asthma (shortness of breath, wheezing) at baseline and that her asthma did not prevent her from performing most normal physical tasks." (Tr. 419.) After considering both

claimant's school absences and her ability to function without exhibiting symptoms of asthma, the ALJ reached the following conclusion:

> The claimant's asthma does not meet the requirements of 103.02 or 103.03: there are no pulmonary function tests of record suggesting serious baseline disease; the claimant did not require hospitalization/physician intervention for serious asthma attacks (she missed school on multiple occasions due to various infections, with asthma, but she did not experience uncontrolled, frequent asthma attacks requiring intensive intervention).

(Tr. 420.) Based on the foregoing, the Court rejects Plaintiff's claim that the ALJ failed to consider claimant's excessive absences due to asthma. Rather, the ALJ considered this in addition to claimant's medical diagnoses and level of functioning at school. In analyzing the record as a whole, the ALJ concluded that claimant's asthma does not meet the requirements of 103.02 or 103.03, and the Court finds that this conclusion was supported by substantial evidence. The Court further notes that there are no treating physician opinions stating that claimant's asthma has rendered her disabled under the Act, or that claimant has a marked or extreme limitation due to her asthma.

Plaintiff further argues that the ALJ failed to consider relevant evidence in her analysis of the acquiring and using information domain, as well as the "B" criteria of the mental health listings entitled "Understanding, Remembering and Applying Information." Specifically, Plaintiff contends that the ALJ failed to consider a May 2018 teacher questionnaire wherein S.B.'s teacher noted that S.B. struggles with various areas of understanding that fall within the purview of the acquiring and using information domain.

In her opinion dated October 19, 2018, ALJ Merrill repeatedly describes and considers

the May 2018 teacher questionnaire completed by Cheryl Rogers, claimant's teacher. ALJ

Merrill writes:

> One of the claimant's teachers, Cheryl Rogers, completed a teacher
> report of May 2018 (Ex. 18E): "serious" problems with
> understanding math problems and understanding/participating in
> and applying problem solving in class discussion were noted, with
> obvious problems learning new material, recalling material, and
> expressing ideas in written form (with some slight problems with
> other tasks; it was noted that the claimant put forth "great effort"
> but sometimes misinterpreted the point of questions); in the
> domain of attending to and completing tasks, she seemed much
> improved despite some "short term memory problems", with no
> problems or only slight problems with activities in this domain;
> with regard to interacting with and relating to others, she again
> exhibited no or only slight problems except for "obvious"
> difficulties relating stories and interpreting body
> language/sarcasm/facial expressions and a serious problem at times
> expressing anger appropriately (Ms. Rogers, who has known the
> claimant for 4+ years, indicated that the claimant has improved
> somewhat over the years with respect to controlling her anger);
> similarly, the claimant was noted to have a serious problem[]
> responding to changes in her own mood (again, Ms. Rogers notes
> that the claimant has improved in this regard somewhat as she has
> aged), and some obvious problems knowing when to ask for help
> and handling frustration (but with no hygiene/self-care issues); no
> manipulative or health problems were noted; Ms. Rogers indicated
> that the claimant was known by staff to have asthma, but that she
> had never observed the claimant to exhibit symptoms or use her
> medication in the school setting.

(Tr. 418-19.) The ALJ also considered a teacher report completed by Ms. Hall in 2013. The

ALJ's consideration of the record as a whole led her to reasonably find that claimant does not

exhibit a marked deficit.

While ALJ Merrill recognized that the teachers' reports established that claimant does

suffer from learning deficits, she concluded that "these teacher reports and the evidence in

general do not suggest that the claimant experienced 'marked' deficits in this area." (Tr. 427.) In reaching this conclusion, ALJ Merrill provided the following explanation:

> [I]t must be noted that the claimant's delays do not appear to be profound; academic testing performed in 2013 suggested some delays but "average" scores in most subjects (Ex. 3F), while March 2017 testing noted that the claimant had lowered grade equivalency in some reading related areas (around 2-3 grade levels below), but at grade level in reading/writing fluency and less than one grade below level in math and spelling (Ex. 16E). Again, with her special education services the claimant was able to earn passing grades generally, despite the fact that in general she spent most of her time in the general education curriculum (in other words, her necessary special education services took up the clear minority of her daily class time). IQ testing, meanwhile noted "low average" functioning prior to the application date, but average intellectual functioning during the most recent March 2016 testing (Ex. 16E, FSIQ 95). The claimant was noted consistently to put forth good effort despite her learning difficulties and reported anxiety, and she does in fact seem to benefit from her special education services with no need for more intensive services (her most recent IEP indicates that she is in general courses at least 80% of the school day).

(Tr. 427.) As explicitly stated and discussed in her comprehensive opinion, it is clear that ALJ Merrill considered the teacher reports from both 2013 and 2018 in making her findings. However, ALJ Merrill's consideration of these reports with the record as a whole led to her reasonable conclusion that claimant's difficulties in the acquiring and using information domain are less than marked. This conclusion is supported by evidence in the record, namely IQ testing, claimant's grades, and claimant's IEP. (Tr. 284, 399-405, 560-571.)

Finally, Plaintiff contends that the ALJ did not complete a proper analysis of paragraph B or paragraph C of the Listings. Plaintiff argues that the record indicates that claimant meets Listings 112.06 for an anxiety disorder and 112.11 for a neurodevelopmental disorder, and "had

the ALJ not disregarded extensive evidence and had she not cherry-picked the record, the ALJ would have found that S.B. also met the paragraph B criteria of Listing 112.06 and Listing 112.11." (Plaintiff's Brief 33.) In support of this contention, Plaintiff refers to arguments claiming that ALJ Merrill disregarded relevant evidence. For the reasons already explained in this Opinion, the Court finds that ALJ Merrill considered the subject evidence and weighed the evidence in the record. This led to ALJ Merrill's supported findings that claimant did not meet the paragraph B criteria of Listing 112.06 or Listing 112.11, and did not meet the Paragraph C criteria of Listing 112.06.

To meet the requirements of Listing 112.06 for an anxiety disorder, Plaintiff was required to show an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; 4. Adapt or manage oneself." Listing 112.06B (internal citations omitted).

Here, the ALJ considered the paragraph B criteria under Listing 112.06 for an anxiety disorder and concluded that claimant's limitations in the areas of "cognitive/communicative functioning and understanding, remembering and applying information are less than marked." (Tr. 420.) In forming this conclusion, ALJ Merrill noted the following: claimant consistently experienced learning difficulties; teacher reports indicated some difficulty in school; IQ testing revealed that claimant had been functioning at the low-average level, but most recently tested in the average IQ range; claimant exhibited "some delay in grade-level equivalencies . . . but was not delayed in other areas or exhibited only minor delays"; and claimant earned passing grades in most subjects since 2013. (Id.) After considering the evidence in the record, ALJ Merrill stated

that "[t]he evidence overall does not suggest that she experienced profound deficits in this area, or that she did not respond to special education." (Id.) Based on this analysis, as well as the Court's previous discussion of the ALJ's comprehensive consideration of claimant's school and medical records, the Court finds that the ALJ's conclusion that claimant's limitation was less than marked is supported by substantial evidence.

The ALJ proceeded to consider whether claimant exhibited either an extreme or marked limitation in the area of interacting with others, noting that "the record does not suggest that the claimant experienced serious problems." (Tr. 421.) To support her ultimate conclusion that claimant's limitations in the area of social functioning were less than marked, the ALJ considered the following: claimant is shy but her social interactions improved with treatment; claimant experienced one isolated episode of bullying; claimant was consistently respectful and appropriate when interacting with teachers and peers; claimant did not have consistent behavioral problems; and claimant sometimes struggled when expressing her emotions but was able to respond to redirection from her teachers. Based on this, the Court finds that the ALJ's conclusion was supported by substantial evidence. Not only is the ALJ's conclusion well supported, but Plaintiff fails to establish that the ALJ erred in her analysis.

ALJ Merrill next considered whether claimant established that she has an extreme or marked limitation in the area of maintaining concentration, persistence and pace. With respect to this area of functioning, ALJ Merrill noted that claimant did "seem to have experienced at least some significant difficulties due primarily to ADHD." (Tr. 421.) Despite considering that claimant experienced some difficulties both at school and at home in focusing and completing tasks, the ALJ noted that, by 2018, a teacher report established that "claimant experienced 'no'

or only 'slight' difficulties in the domain of attending to and completing tasks, which suggests

significant improvement and that her Adderall was effective." (Tr. 422.) Finally, the ALJ

considered school records and report cards in her analysis and concluded that claims from

claimant's mother and attorney were "clearly not consistent" with the claimant's teacher reports,

school records, and medical reports. (Tr. 422.) Based on the ALJ's acknowledgement of

claimant's difficulties in this domain and her comprehensive discussion of claimant's progress

with medication, the Court finds that the ALJ's conclusion that claimant did not suffer from a

marked or extreme limitation in this area is supported by substantial evidence.

Finally, the ALJ considers whether claimant has shown marked or extreme limitations in

the area of personal functioning, "which is analogous to the current area of 'adapting and

managing oneself.'" (Tr. 421.) ALJ Merrill noted that claimant's primary difficulty in this area is

her ability to express anger, tolerate frustration, and handle emotional changes. Despite being a

consistent problem, the ALJ noted that claimant reacted positively to redirection. Moreover, even

though she experienced such difficulties, claimant's school records consistently reported that she

had no behavioral problems and interacted appropriately with others. ALJ Merrill proceeded to

make the following observations: claimant did not experience problems with hygiene or self-

care; claimant did not engage in self-harm; claimant did not suffer from a lack of judgment

regarding hazards or danger; and claimant was able to put forth effort in school. Based on these

observations and her analysis of claimant's school reports, the ALJ concluded that claimant has

"experienced less than marked deficits in the areas of personal functioning/adapting and

managing oneself." (Tr. 421.) The Court finds that this conclusion is supported by substantial

evidence.

After finding that claimant failed to meet the requirements under paragraph B of Listing 112.06, the ALJ considered whether claimant met the requirements under paragraph C. In order to meet the requirements under paragraph C, the claimant must not only show that she received ongoing medical treatment, but must also show that even with such treatment, she only exhibited "marginal adjustment." Listing 112.06C (internal citations omitted). As the ALJ correctly notes, there is no evidence of "marginal adjustment" in this case. To the contrary, ALJ Merrill explains that claimant was able to adjust to changes in school, new grade levels, and other changes typical of childhood. Additionally, claimant was primarily enrolled in general education classes and there was no evidence that she required a special routine that she could not deviate from without serious repercussions. Thus, the ALJ appropriately found that the paragraph C criteria was not satisfied.

To meet the requirements of Listing 112.11 for a neurodevelopment disorder, Plaintiff was required to show an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; 4. Adapt or manage oneself." Listing 112.11B (internal citations omitted). These areas of consideration are the same as that under paragraph B of Listing 112.06, and have been previously discussed. Thus, the Court again finds that ALJ Merrill relied on substantial evidence in her conclusion that claimant did not show an extreme or marked limitation in any of the four listed areas of mental functioning.

Having found that Plaintiff fails to show that the ALJ erred in her analysis and consideration of the evidence in the record, this Court will review the ALJ's factual findings under each of the six (6) functional equivalence domains to ensure that these findings are

supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Ortega v. Comm'r of Soc. Sec.</u>, 232 Fed.Appx. 194, 196 (3d Cir. 2007).

In the matter at bar, the disputed factual findings relate to the ALJ's determinations regarding each of the six functional equivalence domains. Thus, the Court will briefly review each of the domains and determine whether the ALJ's findings were supported by substantial evidence.

1. Acquiring and Using Information

The acquiring and using information domain considers "how well [one] acquire[s] or learn[s] information, and how well [one] use[s] the information [they] have learned." 20 C.F.R. § 416.926a(g). The regulations provide several examples of limited functioning within this domain, but notes that the presence of these limitations does not necessarily indicate a marked or extreme limitation. Rather, the record as a whole is to be considered in making such a determination. Examples of limitations include: the inability to understand words about space, size, or time; the inability to rhyme words or the sounds of words; difficulty recalling important things that were learned in school; difficulty solving math problems; only talking in short, simple sentences; and difficulty explaining what one means. 20 C.F.R. § 416.926a(g)(3).

After conducting her analysis, ALJ Merrill concluded that "claimant has less than marked limitation in acquiring and using information." As previously explained in this opinion, this conclusion was primarily based upon ALJ Merrill's detailed discussion and analysis of teacher reports from 2013 and 2018, education testing conducted in 2013 and 2017, and claimant's most recent IEP. To support her conclusion that claimant's limitation was less than marked, ALJ Merrill noted that "claimant's delays do not appear to be profound," academic testing revealed

that she received average scores in most subjects and largely earned passing grades, claimant

spent most of her time in general education courses and thus did not require a significant amount

of specialized education, and claimant responded well to the special education services she

received. (Tr. 427.) Based on these observations, it appears that the ALJ's conclusion that

claimant's limitation was less than marked was supported by substantial evidence; claimant's

progress and school performance demonstrate that her impairments within this domain have not

"interfere[d] seriously with [her] ability to independently initiate, sustain, or complete activities."

20 C.F.R. § 416.926a(e)(2)(i). After reviewing the documents and corroborating the evidence

which ALJ Merrill relied upon, the Court finds that the ALJ's conclusion was supported by

substantial evidence.

2. Attending and Completing Tasks

When evaluating a claimant's functioning within the attending and completing tasks

domain, the Commissioner is instructed to consider how well a claimant focuses and maintains

attention, and how well a claimant begins, carries through, and finishes activities. The

Commissioner should also consider the pace at which the claimant performs activities and the

ease with which claimant can change activities. Examples of limitations within this domain

include: being easily startled, distracted, or overreactive to sounds, sights, movements, or touch;

difficulty focusing on or failing to complete activities that are of interest to the claimant;

repeatedly being sidetracked from activities or frequently interrupting others; becoming easily

frustrated and giving up on tasks, including those that the claimant is capable of completing; and

requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3).

ALJ Merrill concluded that "claimant has less than marked limitation in attending and

completing tasks." In reaching this conclusion, ALJ Merrill considered the testimony of and statements made by claimant's mother alleging that claimant suffered from serious deficits in this domain. The ALJ also considered claimant's longstanding diagnosis of attention deficit hyperactivity disorder, her prescription for Adderall, and her progress while on this medication. ALJ Merrill explained that although school reports noted multiple occasions when claimant had difficulty concentrating and completing tasks, medical reports indicated that claimant's symptoms were manageable when claimant was taking the appropriate medication and school evaluations noted that claimant was completing tasks at an average level. (Tr. 639, 574.) Thus, the ALJ's ultimate conclusion was based on claimant's overall improvement in this domain and her ability to manage her symptoms while on medication. Moreover, the ALJ notes that claimant's teacher reports "do not suggest profound difficulties in this domain." (Tr. 429.) Despite her consideration of claimant's difficulties within this domain, the ALJ concluded that her analysis of the record as a whole indicated a less than marked limitation in this domain. That is, claimant's progress, ability to manage her ADHD diagnosis, and her ability to complete tasks at an average level show that her impairments related to her ability to concentrate "have not "interfere[d] seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The Court finds that ALJ Merrill's conclusion is supported by substantial evidence, namely, claimant's medical reports and reports documenting her recent progress in school.

3. Interacting and Relating with Others

In the domain of interacting and relating with others, the Commissioner is to "consider how well [claimants] initiate and sustain emotional connections with others, develop and use the

language of [claimants'] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. Examples of limited functioning in this domain include: having no close friends of an appropriate age; avoiding or withdrawing from people that the claimant is familiar with; becoming overly anxious or fearful of meeting new people or trying new things; difficulty playing games or sports with rules; difficulty communicating with others; and difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

In her consideration of the third domain, ALJ Merrill found that "claimant has less than marked limitation in interacting and relating with others." (Tr. 430.) Despite claims made by claimant's attorney and mother that claimant suffers from serious deficiencies in this domain, the ALJ explained that "such assertions are not supported by medical evidence in general." ALJ Merrill proceeded to explain that despite some initial difficulties, "claimant became more social as she got used to her new charter school in 2013." (Tr. 431.) To support this finding, ALJ Merrill cites treatment records from June 2013 which note that claimant saw improvement in the frequency of nightmares, enuresis and other symptoms of PTSD. (Tr. 272.) ALJ Merrill further explained that improvement in this domain was sustained over time: "as late as June 2016 it was reported that the claimant's anxiety symptoms were manageable in all aspects of her life." (Tr. 431.) Finally, to further substantiate her finding, ALJ Merrill discusses yearly IEP reports and various school reports. Although these reports do acknowledge that the claimant has some anger issues, the reports overwhelmingly support the ALJ's finding that claimant is able to appropriately interact and relate with others. For example, of the thirteen "activities" listed under this domain which were evaluated by Ms. Rogers in 2018, Ms. Rogers' determined that claimant

21

had a "slight problem" in two areas and a "serious problem" in only one area. (Tr. 575.) The primary area that claimant struggles with appears to be expressing her anger, but Ms. Rogers noted that "she has gotten better as time has gone on." (Id.) This is consistent with the findings of the ALJ, and supports the ALJ's finding that claimant's limitations within this domain are less than marked. Claimant appears to experience few, if any, limitations in her day-to-day functioning, and her impairments do not seriously interfere with her ability to function and complete activities. See 20 C.F.R. § 416.926a(e)(2)(i). Thus, the Court finds that the ALJ's conclusion is supported by substantial evidence.

    4.  Moving About and Manipulating Objects

    The moving about and manipulating objects domain evaluates the claimant's gross and fine motor skills. ALJ Merrill found that "claimant has no limitation in moving about and manipulating objects." (Tr. 432.) Plaintiff does not dispute this finding.

    5.  Caring for Yourself

    When evaluating the caring for yourself domain, the regulations provide that one must consider how well claimants "maintain a healthy emotional and physical state, including how well [claimants] get [their] physical and emotional wants and needs met in appropriate ways; how [claimants] cope with stress and changes in [their] environment; and whether [claimants] take care of [their] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). Examples of limitations in this domain include: continually placing inedible objects in one's mouth; having restrictive or stereotyped mannerisms (e.g. body rocking, headbanging); failing to dress or bathe appropriately because of impairments affecting this domain; engaging in self-injurious behavior or ignoring safety rules; failing to spontaneously pursue enjoyable activities or interests; and

having disturbance in eating or sleeping patterns. 20 C.F.R. § 416.926a(k)(3).

ALJ Merrill addressed the fifth domain and found that "claimant has less than marked limitation in the ability to care for herself." (Tr. 434.) In reaching this conclusion, the ALJ considered purported medical evidence relied upon by Plaintiff. However, in reviewing these documents, specifically medical reports from University Behavioral Health Care, the ALJ correctly realized that reports of claimant's extreme difficulties in caring for herself were not findings made by a doctor, but rather, were statements made by claimant's mother which were then printed in the reports. To support her conclusion, ALJ Merrill analyzed school reports and medical records. ALJ Merrill writes:

> None of her school records suggest observations of such profound
> difficulties with basic, age-appropriate adaptive skills. Both
> teacher reports (Ex. 5E, 18E) clearly indicate that the claimant
> displayed no deficits in hygiene or age-appropriate self-care (such
> as dressing or eating), and these reports seem entirely consistent
> with the other evidence of record. IEP reports likewise generally
> noted that the claimant exhibited no significant adaptive deficits
> given her age, as previously described in detail.

(Tr. 434.) Similarly, claimant's medical records neither support nor confirm the reports provided by claimant's mother. ALJ Merrill's analysis of the record as a whole demonstrates that any purported impairments that claimant suffered from within this domain did not "interfere[] seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). In fact, ALJ Merrill found that claimant's school and medical records failed to demonstrate any serious deficits or impairments within this domain. Thus, the Court finds that the ALJ's conclusion is supported by substantial evidence in the record.

6. Health and Physical Well-Being

The final domain that must be considered by the Commissioner is the health and physical well-being domain. In evaluating this area of functioning, one must consider "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on [claimant's] functioning." 20 C.F.R. § 416.926a(l). Limitations in this area include the following: having generalized physical symptoms because of claimant's impairments; suffering from somatic complaints as a result of claimant's impairments (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches, or insomnia); experiencing limitations in physical functioning due to side-effects of treatment; having exacerbations from one impairment or a combination of impairments which interfere with physical functioning; and requiring intensive medical care to maintain the claimant's level of health and well-being. 20 C.F.R. § 416.926a(l)(3).

ALJ Merrill concluded that "claimant has less than marked limitation in health and physical well-being." (Tr. 436.) In support of this conclusion, the ALJ considered reports and testimony from claimant's mother that claimant experienced frequent enuresis and had difficulty sleeping. However, in reviewing claimant's medical reports, the ALJ found that such issues had begun to improve in 2013 and that the testimony of claimant's mother was inconsistent with the record. ALJ Merrill explained that "a June 2013 report clearly indicat[ed] that [claimant] had experienced a reduction in the frequency of nightmares/enuresis (Ex. 2F)." ALJ Merrill continued to explain that by June 2016, a medical report from University Behavioral Health Care suggested that claimant's anxiety symptoms were manageable with treatment.

ALJ Merrill also considered claimant's school records and made the following observations:

> The claimant may in fact continue to experience difficulties sleeping normally, but it is not clear from her school records that this results in any serious physical/mental functional deficits; her IEP reports make no mention of sleepiness noted in her records, or of obvious signs of poor physical health or similar symptoms; again, she participated fully in physical education, dance and normal physical activity throughout this period; her teacher reports (Ex. 5E, 18E) make no mention of obvious deficits in this domain (Ms. Rogers indicates that the school was informed that the claimant had asthma, but she could not personally recall ever seeing the claimant use asthma medication in school.)

(Tr. 436-37.) Based on the fact that claimant's medical records indicate that her reported health issues had improved and her school records fail to corroborate reports made by her mother, ALJ Merrill concluded that claimant's sleeping issues did not result in a marked deficit in this domain. Any claimed impairments did not "interfere[] seriously with [claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

ALJ Merrill also considered claimant's asthma. The ALJ correctly noted that claimant was repeatedly absent from school due to illnesses relating to her asthma. However, "[d]espite this, she never required ER or hospital treatment for asthma or other respiratory symptoms, and she never underwent pulmonary function testing which suggested that she experienced serious respiratory problems at a baseline level." (Tr. 436.) Moreover, claimant was able to fully participate in physical education and dance classes throughout her school career and there are no reports that her asthma limited her participation in these activities. Based on the fact that her asthma did not "seriously limit[]" her "day-to-day functioning," the ALJ concluded that "[claimant's] asthma does not seem to result in marked deficits in this domain." (Tr. 436.) See 20

C.F.R. § 416.926a(e)(2)(i). Thus, in light of the foregoing, the Court finds that ALJ's Merrill's conclusion was supported by substantial evidence in the record.

## IV.    CONCLUSION

Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that she was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.


                                              _____ s/ Stanley R. Chesler _____
                                          STANLEY R. CHESLER, U.S.D.J.

Dated: February 5, 2020